### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
ITT INC.                     :      Civ. No. 3:21CV00156(SALM)
                             :
v.                           :
                             :
FACTORY MUTUAL INSURANCE     :
COMPANY                      :      May 10, 2022
                             :
-----------------------------x
```

### RULING ON MOTION TO DISMISS AMENDED COMPLAINT [Doc. #64]

Defendant Factory Mutual Insurance Company ("FMIC" or

"defendant")[1] has filed a motion pursuant to Federal Rule of

Civil Procedure 12(b)(6) seeking to dismiss the Amended

Complaint (Doc. #57) in its entirety. [Doc. #64]. Plaintiff has

filed a memorandum in opposition to the Motion to Dismiss [Doc.

#65], to which defendant has filed a reply [Doc. #66]. Both

parties have filed supplemental briefing. [Docs. ##68, 69, 71,

72, 73, 74, 75, 76]. For the reasons stated herein, the Motion

to Dismiss [**Doc. #64**] is **GRANTED.**

Plaintiff also filed a Motion for Oral Argument, see Doc.

#67, to which defendant filed a response, see Doc. #70. The

Court has determined that oral argument is not necessary and

would not assist the Court in ruling on the pending motion. See

D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for

---

[1] Plaintiff refers to defendant as "FM" in its submissions.

oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument."). Accordingly, plaintiff's Motion for Oral Argument [**Doc. #67**] is **DENIED**.

## I.    Procedural Background

Plaintiff ITT Inc. ("ITT" or "plaintiff") brought this action on February 5, 2021, against FMIC. See Doc. #2 at 1.[2] On April 2, 2021, FMIC filed a motion to dismiss, see Doc. #29, to which plaintiff filed an opposition on April 23, 2021. See Doc. #42. Judge Stefan R. Underhill granted the motion to dismiss without prejudice to plaintiff filing an Amended Complaint. See Doc. #55, Doc. #56. On September 2, 2021, ITT filed an Amended Complaint, which is now the operative complaint. See Doc. #57. This matter was transferred to the undersigned on October 15, 2021. See Doc. #63. FMIC filed the instant Motion to Dismiss on November 8, 2021. See Doc. #64.

## II.   Factual Background

The Court accepts the following allegations as true, solely for purposes of this Motion to Dismiss.

"ITT is a worldwide diversified manufacturing and technology company. ITT manufactures products and components and provides services for the aerospace, transportation, energy,

---

[2] Throughout this Ruling, the Court cites to the page numbers reflected in each document's ECF header, rather than any numbering applied by the filing party.

communications, and industrial markets." Doc. #57 at 3. "FM sold ITT an insurance policy which 'covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.'" Id. at 3 (quoting Doc. #57-1 at 9).

In March 2020, numerous ITT facilities worldwide "were shut-down, thus curtailing access, following issuance of civil authority shelter-in-place orders because, among other things, the actual presence of the COVID-19 communicable disease within five miles of covered ITT locations was causing loss or damage to property." Id. at 19. "[T]he COVID-19 communicable disease had been identified to be present at several covered ITT locations because infected persons entered the premises, thus causing the shut-down of the business[.]" Id. at 18.

By its terms, the Policy provides coverage for "TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured: 1) to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below[.]" Doc. #57-1 at 49. Plaintiff asserts that this provision provides "coverage for business interruption and related losses sustained by ITT resulting from the inability to put damaged property to its normal use where 'normal' is defined by the Policy as 'the condition that would

have existed had no physical loss or damage happened.'" Doc. #57 at 4 (quoting Doc. #57-1 at 85).

The Policy also contains several Time Element coverage extensions. As relevant here, the Policy extends Time Element coverage under the following provisions: (1) "Civil or Military Authority[,]" Doc. #57-1 at 61; (2) "Ingress/Egress[,]" id. at 62; and (3) "Logistics Extra Cost[.]" Id. at 63. The Policy's Civil or Military Authority Extension provides coverage for:

> [T]he Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

Id. at 61.

The Policy's Ingress/Egress Extension provides coverage as follows:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location,** whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.

Id. at 62.

Finally, the Policy provides the following Logistics Extra Cost coverage:

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

> 1) directly between insured **locations**; or

> 2) directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract services provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Id. at 63.

The Policy provides additional coverage for Claims Preparation Costs. The Policy's Claims Preparation Costs provision provides coverage for, among other things, "the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability." Id. at 33.

The Policy contains the following Contamination Exclusion:

This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

> 1)    **contamination**,  and  any  cost  due  to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the

> actual not suspected presence of
> **contaminant**(s) directly results from other
> physical damage not excluded by this Policy,
> then only physical damage caused by such
> **contamination** may be insured.

Id. at 25.

Contamination is defined as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." Id. at 82.

While the policy excludes coverage for contamination and related costs, it provides Communicable Disease coverage with a $1,000,000.00 annual aggregate sublimit under two provisions. See id. at 15. Communicable Disease is defined as a "disease which is: A. transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or B. Legionellosis." Id. at 82.

Under the first Communicable Disease provision, "Communicable Disease Response" Coverage, the Policy provides:

> If a **location** owned, leased or rented by the Insured has
> the actual not suspected presence of **communicable**
> **disease** and access to such location is limited,
> restricted or prohibited by:
>
> > 1)    an order of an authorized governmental agency
> >       regulating the actual not suspected presence
> >       of **communicable disease**; or

> 2) a decision of an Officer of the Insured as a
> result of the actual not suspected presence of
> a **communicable disease,**

this Policy covers the reasonable and necessary costs
incurred by the Insured at such **location** with the actual
not suspected presence of **communicable disease** for the:

> 1) cleanup, removal and disposal of the actual
> not suspected presence of **communicable
> diseases** from insured property; and
>
> 2) actual costs of fees payable to public
> relations services or actual costs of using
> the Insured's employees for reputation
> management resulting from the actual not
> suspected presence of **communicable diseases** on
> insured property.

Id. at 33-34.

The Second Communicable Disease provision provides coverage

for "Interruption by Communicable Disease" as follows:

> If a **location** owned, leased or rented by the Insured has
> the actual not suspected presence of **communicable
> disease** and access to such **location** is limited,
> restricted or prohibited by:
>
> 1) an order of an authorized governmental agency
> regulating the actual not suspected presence
> of **communicable disease;** or
>
> 2) a decision of an Officer of the Insured as a
> result of the actual not suspected presence of
> **communicable disease,**
>
> this Policy covers the Actual Loss Sustained and EXTRA
> EXPENSE incurred by the Insured during the PERIOD OF
> LIABILITY at such **location** with the actual not suspected
> presence of **communicable disease.**

Id. at 68.

"ITT submitted its initial proof of loss under the Policy to FM on June 26, 2020." Doc. #57 at 23. Defendant "acknowledged receipt of the proof of loss on July 17, 2020." Id. In its July 17, 2020, letter, defendant rejected plaintiff's claim for coverage "arising from the novel coronavirus under the civil or military authority, time element and contingent time element extended, and extra expense coverages under the Policy." Doc. #57-3 at 67. Specifically, defendant stated:

> [T]he presence of COVID-19 at an insured location does not constitute "physical damage of the type insured" as required under those provisions of the Policy. The presence of a virus does not alter or materially change property. Your locations were not rendered unusable by the tangible presence of the virus, but instead were closed to prevent the spread of the virus among humans by coming into close contact with each other, whether or not the virus was actually present on any property. ...
>
> Even assuming the presence of coronavirus at each of the ITT locations in the claim could be established, which it has not been, it does not cause any physical change or new risk to the physical integrity of the property in any way, let alone create tangible, structural damage. Thus, the mere threat of the coronavirus at the property or the preemptive closure of those locations to prevent the spread of COVID-19 is not considered "direct physical loss or damage" to property.
>
> Moreover, contamination due to COVID-19 would be excluded under the Policy. We again refer you to our 13 May 2020 letter, and the relevant provisions of the contamination exclusion and the definition of **contamination**, which includes "...pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent..." Thus, a virus such as COVID-19 is expressly identified as a form of contamination under the Policy.

Id.

Following defendant's July 10, 2021, letter, the parties "continued to discuss ITT's claim over the next ten months." Doc. #57 at 24. Ultimately, defendant paid plaintiff "the $1 million annual aggregate sublimit" under the Policy's Communicable Disease Response and Interruption by Communicable Disease coverage provisions. Doc. #64-1 at 16; see also Doc. #57 at 24.

Plaintiff argues that it is entitled to additional coverage under the Policy's Time Element, Civil or Military Authority, Ingress/Egress, Logistics Extra Cost, and Claims Preparation Costs provisions. See Doc. #57 at 22-23.

## III. **Legal Standard**

"When deciding a motion to dismiss, a district court may consider documents attached to the complaint or incorporated by reference into the complaint[,]" including an insurance policy referenced in the complaint. New Image Roller Dome, Inc. v. Travelers Indem. Co. of Ill., 310 F. App'x 431, 432 (2d Cir. 2009) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021). In reviewing such a motion, the Court "must

accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." <u>Kaplan</u>, 999 F.3d at 854 (citations omitted).

"[W]hile this plausibility pleading standard is forgiving, it is not toothless. It does not require [the Court] to credit legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." <u>Mandala v. NTT Data, Inc.</u>, 975 F.3d 202, 207 (2d Cir. 2020) (citation and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 678 (citations and quotation marks omitted).

## IV.   <u>Choice of Law</u>

Plaintiff makes no argument regarding choice of law, but simply cites to and relies upon Connecticut law in its opposition brief. <u>See</u> Doc. #65 at 18-19. Defendant asserts that the outcome would be the same "regardless of whether Connecticut or New York law applies and, therefore, the Court need not engage in a choice-of-law analysis." Doc. #64-1 at 18 n.5. The Court therefore applies Connecticut law, but has consulted New York law as well.

## V.   <u>Law Regarding Interpretation of Insurance Policies</u>

Under Connecticut law, "[a]n insurance policy is to be interpreted by the same general rules that govern the

construction of any written contract. ... If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." <u>Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.</u>, 84 A.3d 1167, 1173 (Conn. 2014) (citation and quotation marks omitted). The "policy language remains the touchstone of our inquiry." <u>Conn. Ins. Guar. Ass'n v. Fontaine</u>, 900 A.2d 18, 22 (Conn. 2006).

"A contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured." <u>Misiti, LLC v. Travelers Prop. Cas. Co. of Am.</u>, 61 A.3d 485, 490-91 (Conn. 2013) (citations and quotation marks omitted). However, the Court need not resolve an ambiguity that does not exist, and must not manufacture one. Thus, the "rule of construction that favors the insured in case of ambiguity applies only when the terms are, without violence, susceptible of two equally reasonable interpretations." <u>Id.</u> at 491 (citation and quotation marks omitted).

> In determining whether the terms of an insurance policy are clear and unambiguous, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.

Zulick v. Patrons Mut. Ins. Co., 949 A.2d 1084, 1088 (Conn. 2008) (citation and quotation marks omitted). The Court will not find that ambiguity exists "simply because lawyers or laymen contend for different meanings[]" of certain words, or simply "because a contract fails to define them[.]" New London Cnty. Mut. Ins. Co. v. Nantes, 36 A.3d 224, 235 (Conn. 2012) (citations and quotation marks omitted); see also Misiti, LLC, 61 A.3d at 491 ("The fact that the parties advocate different meanings of the insurance policy does not necessitate a conclusion that the language is ambiguous." (citations and quotation marks omitted)).

## VI. **Discussion**

Plaintiff's Amended Complaint asserts a single claim for breach of contract. See Doc. #57 at 25-26. Defendant argues that this action should be dismissed in its entirety because: (1) "Plaintiff Cannot Demonstrate Physical Loss or Damage to its Insured Properties[,]" Doc. #64-1 at 19; (2) "The Policy's Contamination Exclusion Bars ITT's Claim for Coverage[,]" Id. at 33; and (3) "The Loss of Use Exclusion bars Plaintiff's claims for damages arising from ITT's alleged inability to fully use its properties." Id. at 37. Plaintiff opposes defendant's Motion to Dismiss on all three grounds. See Doc. #65. The Court finds that plaintiff's failure to adequately allege any physical loss

or damage under the Policy is fatal to its breach of contract claim. Accordingly, for the reasons set forth below, defendant's Motion to Dismiss is **GRANTED.**

**A.   Physical Loss or Damage**

The breach of contract claim fails because plaintiff has not adequately alleged any physical loss or damage under the Policy.

1.   Relevant Contractual Provisions

Plaintiff asserts the right to coverage under the: (1) Time Element; (2) Civil or Military Authority; (3) Ingress/Egress; (4) Logistics Extra Cost; and (5) Claims Preparation Cost provisions. See Doc. #57 at 22-23. Each of these provisions requires either "physical damage of the type insured" or "physical loss or damage of the type insured." Doc. #57-1 at 49, 61, 62, 63.

First, plaintiff asserts the right to coverage under the Time Element provision. The Policy's Time Element provision states: "The Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from **physical loss or damage of the type insured ... to property described elsewhere in this Policy[.]**" Id. at 49 (emphasis added). Thus, under the Policy's Time Element provision, "physical loss or damage" to property is necessary to trigger coverage.

Second, plaintiff asserts the right to coverage under the Policy's Civil or Military Authority Extension. The Civil or Military Authority Extension states that defendant will provide coverage for

> the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the **direct result of physical damage of the type insured at the insured location or within five statute miles/eight kilometres of it.**

Id. at 61 (emphasis altered). Thus, before coverage under the Civil or Military Authority Extension is triggered, "physical damage" to property is required.

Third, plaintiff asserts the right to coverage under the Ingress/Egress Extension. That extension provides coverage for losses incurred

> due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured location, whether or not the premises or property of the Insured is damaged **provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.**

Id. at 62 (emphasis altered). Thus, before coverage under the Ingress/Egress Extension is triggered, "physical damage" to property is required.

Fourth, plaintiff asserts the right to coverage under the Logistics Extra Cost Extension. The Logistics Extra Cost Extension

covers the extra cost incurred by the Insured during the
PERIOD OF LIABILITY due to the disruption of the normal
movement of goods or materials:

1)   directly between insured locations; or

2)   directly between an insured location and a location
     of a direct customer, supplier, contract
     manufacturer or contract services provider to the
     Insured,

**provided that such disruption is a direct result of
physical loss or damage of the type insured to property
of the type insured located within the TERRITORY of this
Policy.**

Id. at 63 (emphasis altered). Thus, under the Policy's Logistics

Extra Cost Extension, "physical loss or damage" to property is

necessary to trigger coverage.

Finally, plaintiff asserts the right to coverage under the

Claims Preparation Costs provision. Although this coverage does

not itself require physical loss or damage, it is contingent on

an "insured loss ... for which the Company has accepted

liability." Id. at 33. Thus, coverage under this provision, too,

hinges upon plaintiff's ability to show physical loss or damage

to property under one of the four previously mentioned

coverages.

In sum, each provision under which plaintiff asserts the

right to coverage requires either "physical damage" or "physical

loss or damage" to property. Because the Court finds that

plaintiff has not adequately alleged any "physical loss or

damage" to property under the Policy, plaintiff fails to state a
claim for breach of contract.

    2.   <u>The Policy's Language</u>

The Court turns to the threshold interpretive issue of the
policy language. The Court finds that the phrase "physical loss
or damage" is not ambiguous. Where, as here, a term is undefined
in an insurance policy, "it must be given its plain, ordinary
meaning." <u>Costabile v. Metro. Prop. & Cas. Ins. Co.</u>, 193 F.
Supp. 2d 465, 477 (D. Conn. 2002).

A review of the plain, ordinary meaning of the phrase
"physical loss or damage" reveals that such language
"unambiguously requires physical damage or physical alteration"
to property. <u>Great Meadow Cafe v. Cincinnati Ins. Co.</u>, No.
3:21CV00661(KAD), 2022 WL 813796, at *6 (D. Conn. Mar. 17,
2022); <u>see also</u> <u>Jeffrey M. Dressel, D.D.S., P.C. v. Hartford
Ins. Co. of the Midwest, Inc.</u>, No. 20CV02777(KAM), 2021 WL
1091711, at *3 (E.D.N.Y. Mar. 22, 2021) (interpreting
substantially similar language, and finding that "the language
of the Policy was clear and unambiguous, and required coverage
only in the event of some physical harm to property[]"). Indeed,
as the Eastern District of New York has aptly explained when
interpreting substantially similar language:

    The plain language of "physical loss of ... property"
    does not mean, as Plaintiff argues, a loss of the ability
    to run the business. A "physical loss" means that

> physical property suffered a loss. Plaintiff, however, does not allege that its loss of income was caused by any physical property suffering a loss, in value or otherwise. Similarly, "physical damage to property" can only mean that the physical property suffered some sort of physical damage.

Jeffrey M. Dressel, D.D.S., P.C., 2021 WL 1091711, at *3.

The undersigned agrees with this analysis. "Deriving the plain and ordinary meaning of [virtually] identical contract language from the dictionary, courts in this Circuit have repeatedly concluded that the phrase direct physical loss of or physical damage to connotes a negative alteration in the tangible condition of property, that is, that this phrase requires some form of actual physical damage to the insured premises." Mario Badescu Skin Care Inc. v. Sentinel Ins. Co., No. 20CV06699(AT), 2022 WL 253678, at *4 (S.D.N.Y. Jan. 27, 2022) (citations and quotation marks omitted); see also Deer Mountain Inn LLC v. Union Ins. Co., No. 21-1513-cv, 2022 WL 598976, at *2 (2d Cir. Mar. 1, 2022) (rejecting claim for coverage under substantially similar policy language because plaintiff failed to "plausibly allege that its insured property sustained any physical damage; it merely allege[d] loss of use of that property[]"). "Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or

'damage.'" <u>Michael Cetta, Inc. v. Admiral Indem. Co.</u>, 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020), <u>appeal</u> <u>withdrawn</u>, No. 21-57-cv, 2021 WL 1408305 (2d Cir. Mar. 23, 2021).

The Policy's language is not "reasonably susceptible to more than one reading." <u>Lexington Ins. Co.</u>, 84 A.3d at 1173 (citation and quotation marks omitted). Plaintiff advances its own proposed interpretation of physical loss or damage. Relying on certain selected dictionary definitions of the relevant language, plaintiff asserts:

> The word "physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature." Definitions of "loss" include (i) "the partial or complete deterioration or absence of a physical capability or function," (ii) "the harm or privation resulting from losing or being separated from someone or something," and (iii) the "failure to gain, win, obtain, or utilize." Damage is defined as a "loss or harm resulting from <u>injury to</u> person, <u>property</u>, or reputation." The word "or" is a disjunctive, meaning the Policy covers "loss" or "damage," or both.

Doc. #65 at 22 (citations omitted).

Piecing these definitions together, plaintiff goes on to assert that "physical 'loss' occurs when property <u>is damaged</u>. Property 'damage,' however, is not required for there to be physical 'loss.' Property 'damage' may require injury. Property 'loss,' however, can exist simply when property loses its 'physical capability or function,' from 'privation' or from the inability to utilize the property." <u>Id.</u>

"However, the mere fact that" ITT was "deprived of the full desired use of their properties does not mean that there was an actual loss of those properties. Rather, the property itself was unharmed, and remained in the same condition it was in prior to the pandemic." ENT & Allergy Assocs., LLC v. Cont'l Cas. Co., No. 3:21CV00289(SALM), 2022 WL 624628, at *6 (D. Conn. Mar. 3, 2022); see also BR Restaurant Corp., v. Nationwide Mut. Ins., No. 21-2100-cv, 2022 WL 1052061, at *2 (2d Cir. Apr. 8, 2022) (holding that plaintiff did not adequately allege physical loss or damage where it alleged "nothing more than the losses it suffered as a result of restrictions on its use of the premises"); SA Hosp. Grp., LLC v. Hartford Fire Ins. Co., No. 21-1523-cv, 2022 WL 815683, at *2 (2d Cir. Mar. 18, 2022) ("[Plaintiff] alleges only a loss of use of property with respect to its restaurants, which does not amount to an actual physical loss of property." (citation and quotation marks omitted)). Thus, "the term 'physical loss or damage' is clear and unambiguous. It requires actual physical damage to the insured's property. Mere loss of use or functionality will not do." St. George Hotel Asocs., LLC v. Affiliated FM Ins. Co., No. 20CV05097(DG), 2021 WL 5999679, at *6 (E.D.N.Y. Dec. 20, 2021).

In an attempt to escape this conclusion, plaintiff asserts: "If physical 'loss' requires a 'tangible, physical alteration' of property, as FM asserts, then the term 'physical loss' has no

meaning in the Policy. Rather, the FM Policy would only cover physical 'damage' to property, therefore rendering superfluous any coverage for physical 'loss.'" Doc. #65 at 27.

"Multiple courts have convincingly rejected this theory because the terms 'loss' and 'damage' are <u>not</u> redundant and have readily different meanings." <u>Conn. Children's Med. Ctr. v. Cont'l Cas. Co.</u>, --- F. Supp. 3d ---, No. 3:21CV00291(JAM), 2022 WL 168786, at *4 (D. Conn. Jan. 19, 2022). "The fact that 'direct physical loss' and 'direct physical damage' both require tangible alteration to property does not render either term superfluous." <u>Cosm. Laser, Inc. v. Twin City Fire Ins. Co.</u>, --- F. Supp. 3d ---, No. 3:20CV00638(SRU), 2021 WL 3569110, at *14 (D. Conn. Aug. 11, 2021). To the contrary: "'[T]he word 'loss' may refer to complete destruction while 'damage' connotes lesser harm that may be repaired.'" <u>Conn. Children's Med. Ctr.</u>, 2022 WL 168786, at *4 (quoting <u>Sandy Point Dental, P.C. v. Cincinnati Ins. Co.</u>, 20 F.4th 327, 332 (7th Cir. 2021)); <u>see also</u> <u>Cosm. Laser, Inc.</u>, 2021 WL 3569110, at *14.

The undersigned agrees. The terms loss and damage are not redundant, and there is no need to adopt an unnatural interpretation of the term physical loss to mean "a functional 'loss of use' of one's property." <u>Conn. Children's Med. Ctr.</u>, 2022 WL 168786, at *4. Accordingly, requiring tangible

alteration to property in order to trigger physical loss <u>or</u> damage under the Policy does not render either term superfluous.

The "court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." <u>Zulick</u>, 949 A.2d at 1088 (citation and quotation marks omitted). Thus, the Court joins the "overwhelming weight of precedent[,]" <u>St. George Hotel Assocs., LLC</u>, 2021 WL 5999679, at *6, in finding that the plain meaning of the phrase "physical loss or damage" "connotes a negative alteration in the tangible condition of property[.]" <u>Mario Badescu Skin Care Inc.</u>, 2022 WL 253678, at *4 (citations and quotation marks omitted); <u>see also</u> <u>Great Meadow Cafe</u>, 2022 WL 813796, at *4 ("The United States Court of Appeals for the Second Circuit and courts in the District of Connecticut have uniformly found that the plain, ordinary meaning of nearly identical language, direct physical loss or damage, is reasonably susceptible to only one interpretation, and unambiguously requires a physical alteration to property." (citation and quotation marks omitted)).

This interpretation finds further support from the Time Element Coverage's "Period of Liability" provision. Doc. #57-1 at 55-56. As defendant explains, "the Period of Liability commences at the 'time of physical loss or damage of the type insured[.]'" Doc. #64-1 at 11 (quoting Doc. #57-1 at 55-56). The Period of Liability ends "when with due diligence and dispatch

the building and equipment could be: (i) repaired or replaced; and (ii) made ready for operations, under the same or equivalent physical and operating conditions that existed prior to the damage." Doc. #57-1 at 55-56.

However, "[i]f there has been no physical alteration to the condition or location of the property, there is nothing to 'repair ... or replace.'" Chief of Staff LLC v. Hiscox Ins. Co. Inc., 532 F. Supp. 3d 598, 603 (N.D. Ill. 2021) (citation omitted) (applying Connecticut law). Thus, the fact "[t]hat the policy provides coverage until property 'should be repaired ... or replaced' ... assumes physical alteration of property[.]" Cosm. Laser, Inc., 2021 WL 3569110, at *14 (citations and quotation marks omitted).

Plaintiff does not address the import of the "Period of Liability" provision. Instead, plaintiff advances two additional arguments in support of its claim that other provisions in the Policy support its proposed interpretation of physical loss or damage. Both fail.

Plaintiff first argues that "[t]he FM Policy Contemplates that Communicable Disease at Property is Covered 'Physical Loss or Damage[.]'" Doc. #65 at 28. To support that assertion, plaintiff contends that "[t]he Policy's Time Element coverage 'directly resulting from physical loss or damage of the type insured' includes 'Interruption By Communicable Disease' as an

additional coverage 'extension.'" Id. (quoting Doc. #57-1 at 49, 68). Plaintiff thus appears to contend that because physical loss or damage is necessary to trigger time element coverage, and because Interruption by Communicable Disease is an extension of that coverage, communicable disease must constitute physical loss or damage under the Policy.

The Court disagrees. While the Policy's Interruption by Communicable Disease provision is silent as it pertains to a physical loss or damage requirement, numerous other time element extensions require physical loss or damage to invoke the right to coverage. See, e.g., Doc. #57-1 at 63 ("Logistics Extra Cost" extension requires "physical loss or damage of the type insured"); Doc. #57-1 at 66 ("Attraction Property" extension requires "physical loss or damage of the type insured to property of the type insured"). Such language would be superfluous if every extension definitionally and in every situation constituted physical loss or damage. See Ramirez v. Health Net of Ne., Inc., 938 A.2d 576, 586 (Conn. 2008) ("[T]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous." (citation and quotation marks omitted)). Thus, the fact that the Policy includes an extension to its Time Element coverage for Interruption by Communicable Disease does not mean that the mere

presence of a communicable disease at a property amounts to physical loss or damage to that property.

Plaintiff next asserts that the "Policy would not need to exclude 'any cost due to contamination' if it did not contemplate that the identified 'contaminants' caused 'physical loss or damage' in the first instance." Doc. #65 at 28-29. This flips the Policy on its head. The Policy's Contamination Exclusion merely provides that where physical loss or damage is caused by contamination, such losses or damages will be excluded from coverage. It does not follow that <u>all</u> contamination necessarily causes physical loss or damage. <u>See</u> <u>Kim-Chee LLC v. Philadelphia Indem. Ins. Co.</u>, No. 21-1082-cv, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022) ("[T]he words used in the policy must themselves express an intention to provide coverage." (citations and quotation marks omitted)).[3]

In sum, none of plaintiff's attempts to import ambiguity into the Policy are persuasive. The Policy's "physical loss or damage" requirement is reasonably susceptible to only one

---

[3] Plaintiff asserts that defendant's "statements to regulators, made contemporaneously with its introduction of the communicable disease coverages and with its revisions to the coverages over time, are compelling evidence of FM's underwriting intent." Doc. #65 at 30. However, "the parol evidence rule bars the introduction of any extrinsic evidence to vary or contradict the plain meaning" of an insurance contract. <u>Heyman Assocs. No. 1 v. Ins. Co. of Pa.</u>, 653 A.2d 122, 135 (Conn. 1995).

interpretation, and unambiguously requires a physical alteration
to property.

Accordingly, the Court joins the other courts in the
District of Connecticut and throughout the Second Circuit to
hold that the phrase "physical loss or damage" does "not extend
to mere loss of use of a premises, where there has been no
physical damage to such premises; those terms instead require
actual physical loss of or damage to the insured's property."
10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd., 21 F.4th 216,
222 (2d Cir. 2021); see also, e.g., SA Hosp. Grp., 2022 WL
815683, at *2 ("[Plaintiff] alleges only a loss of use of
property with respect to its restaurants, which does not amount
to an 'actual physical loss of' property."); Kim-Chee LLC, 2022
WL 258569, at *1 ("[T]o survive dismissal, [plaintiff's]
complaint must plausibly allege that the virus itself inflicted
actual physical loss of or damage to property." (citation and
quotation marks omitted)); Rye Ridge Corp. v. Cincinnati Ins.
Co., No. 21-1323-cv, 2022 WL 120782, at *2 (2d Cir. Jan. 13,
2022) (dismissing claim for coverage where plaintiffs did "not
allege any physical damage to their insured premises"); Conn.
Children's Med. Ctr, 2022 WL 168786, at *6 (D. Conn. Jan. 19,
2022) ("In short, whether the theory is based on 'loss of use'
of property or based on 'physical damage' from the COVID-19
virus itself, the result is the same: there is no 'direct

physical loss or damage' to property."); Cosm. Laser, Inc., 2021
WL 3569110, at *13 ("Under ... Connecticut law, 'direct physical
loss' requires physical alteration of property."); Farmington
Vill. Dental Assocs., LLC v. Cincinnati Ins. Co., --- F. Supp.
3d ---, No. 3:20CV01647(VAB), 2021 WL 3036902, at *10 (D. Conn.
July 19, 2021) ("Under Connecticut law, however, losses due to a
property's inoperability without any physical loss or damage to
the property itself are not recoverable with this type of
property insurance coverage.").[4]

>          3.   Plaintiff's Theories of Recovery

    Plaintiff asserts that it has "Plausibly Pled that its
Property Suffered Physical Loss or Damage as a Result of the
Presence of COVID-19[.]" Doc. #65 at 32. Specifically, plaintiff
contends that it: (1) "suffered 'physical damage' because COVID-
19 physically harmed, changed, or altered its property,
including the air and surfaces[,]" id.; and (2) "suffered
'physical loss' because the presence of COVID-19 rendered its
property nonfunctional, uninhabitable, unusable, unsafe,
uninhabitable, or otherwise physically deprived ITT of its

---

[4] Plaintiff has provided citations to a number of cases to
support its argument that physical loss or damage does not
require physical alteration to property. See generally Doc. #65.
However, this Court declines to follow such cases, which
constitute a minority position nationwide, because they are
unpersuasive, distinguishable, and/or do not apply Connecticut
law.

property." Id. at 36 (sic). Neither of plaintiff's arguments is persuasive.

    a.   *COVID-19's Physical Impact on Property*

Plaintiff first asserts that it "has plausibly alleged that the presence of COVID-19 physically harmed, changed, or altered the content of the air and the character of the surfaces of its property." Id. at 32. Specifically, plaintiff contends that it "alleged that the air and the surfaces of indoor work environments, including floors, doors, doorhandles, elevator buttons, handrails, machinery, equipment, computers, keyboards, computer mouses and accessories, documents, and other physical items and surfaces, can be damaged by the presence of people with COVID-19." Id. at 32-33.

Courts in the Second Circuit have consistently rejected this theory. Judge Meyer recently addressed such a claim:

> [T]he policy terms "direct physical loss or physical damage" required some form of physical or structural alteration to the policyholder's property in the form of a perceptible harm and with observable, tangible effects. [Cosm. Laser, Inc., 2021 WL 3569110, at *13.] "The presence of fleeting, microscopic entities does not amount to significant structural change," and "'[i]f, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result.'" Id. at ---, 2021 WL 3569110 at *14 (quoting Unmasked Mgmt., Inc. v. Century-National Ins. Co., 514 F. Supp. 3d 1217, 1226 (S.D. Cal. 2021)). The fact that virus particles infiltrate and linger in the air and on

interior surfaces in a manner that is not permanent and
that could be sanitized with ordinary household cleaner
did not amount to "physical loss or physical damage" to
the property. Ibid.

Conn. Children's Med. Ctr., 2022 WL 168786, at *5; see also ENT

& Allergy Assocs., LLC, 2022 WL 624628, at *10; Cosm. Laser,

Inc., 2021 WL 3569110, at *13-14.

The undersigned agrees, especially in light of the

Connecticut Supreme Court's decision in Capstone Bldg. Corp. v.

Am. Motorists Ins. Co., 67 A.3d 961 (Conn. 2013). There,

increased carbon monoxide levels were present at a covered

property. See id. at 971. The policy covered "'[p]roperty

damage[,]'" which was defined in relevant part to include

"'[p]hysical injury to tangible property, including all

resulting loss of use of that property[.]'" Id. at 976. The

court rejected plaintiffs' claims for coverage under that

provision, holding that "the escape of carbon monoxide, without

more, is not property damage." Id. at 979. "'Although the

Capstone decision involved different policy language than the

language at issue in this case, it tends if anything to support

the defendants here because it interprets the term 'property

damage' to require no less than a physical and tangible

alteration to the property.'" Dr. Jeffrey Milton, DDS, Inc. v.

Hartford Cas. Ins. Co., No. 3:20CV00640(SALM), 2022 WL 603028,

at *10 (D. Conn. Mar. 1, 2022) (quoting <u>Conn. Children's Med.</u> <u>Ctr.</u>, 2022 WL 168786, at *5).[5]

In an attempt to sidestep these decisions, plaintiff argues that "[w]hether COVID-19 causes 'physical loss or damage' to property and air is a factual issue," and, as a result, "[i]t is not appropriate to determine at the pleading stage that although the Virus can harm humans, it does not physically alter structures." Doc. #65 at 35 (citations and quotation marks omitted). Despite plaintiff's argument to the contrary, however, "[u]nder Connecticut law, the interpretation of an unambiguous contract is a matter of law to be decided by the Court." <u>Gen.</u> <u>Elec. Cap. Corp. v. C&C Concrete Pumping, Inc.</u>, No. 3:10CV01371(SAS), 2014 WL 12748887, at *4 (D. Conn. May 27, 2014) (citing <u>Tallmadge Bros. v. Iroquois Gas Transmission Sys.,</u> <u>L.P.</u>, 746 A.2d 1277, 1287 (Conn. 2000)). Thus, the undersigned finds that, as a matter of law, "the COVID-19 virus does not qualify as damage to the property itself, given the virus's short lifespan." <u>Mario Badescu Skin Care Inc.</u>, 2022 WL 253678, at *5 (citation and quotation marks omitted); <u>see also</u> <u>John Gore</u>

---

[5] Plaintiff contends that this case is distinguishable because "<u>Capstone</u>'s discussion of 'physical, tangible alteration' to property only concerns property 'damage,' <u>not</u> property 'loss'[,]" Doc. #65 at 25, whereas plaintiff's policy "covers ITT <u>either</u> for physical '<u>damage</u>' to property or for physical '<u>loss</u>' to property." <u>Id.</u> However, for the reasons described <u>supra</u> at 19-20, plaintiff's arguments concerning the disjunctive use of 'physical loss' and 'physical damage' are unpersuasive.

_Org., Inc. v. Fed. Ins. Co._, No. 21CV02200(PGG), 2022 WL 873422, at *12 (S.D.N.Y. Mar. 23, 2022) (rejecting argument that there was a "factual dispute[]" regarding "whether the COVID-19 virus caused physical damage to Plaintiff's property"); _see also_ _Sharde Harvey DDS PLLC v. Sentinel Ins. Co. Ltd._, No. 20CV03350(PGG), 2022 WL 558145, at *10 (S.D.N.Y. Feb. 24, 2022) (rejecting argument that whether COVID-19 caused physical damage was a factual dispute because "the Second Circuit rejected the notion that the COVID-19 virus -- standing alone -- could cause 'physical damage' to property").

In sum, "the presence of COVID-19 on the surfaces or in the ambient air is not sufficient to allege" physical loss or damage. _Dr. Jeffrey Milton, DDS, Inc._, 2022 WL 603028, at *10. Rather, to be entitled to coverage under the Policy, plaintiff must also allege facts showing that COVID-19 caused actual physical loss of, or damage to, property. It has not done so here. Accordingly, plaintiff fails to state a claim for breach of contract under this theory.

> b.   _Loss of Use_

Plaintiff further asserts that it suffered a physical loss, and is therefore entitled to coverage, "because the presence of COVID-19 rendered its property nonfunctional, uninhabitable, unusable, unsafe, uninhabitable, or otherwise physically deprived ITT of its property." Doc. #65 at 36 (sic).

Specifically, plaintiff contends that "ITT's business activities were suspended due to business premises rendered unreasonably dangerous for any or full occupancy and unfit for their ordinary or intended purposes (even in cases in which COVID-19 was not actually present nor suspected to be present at the business location), due to pandemic conditions and the threat posed by COVID-19 in general geographic proximity (i.e., within five miles) of the business location." Id. at 36.

This theory fails, however, because plaintiff does not allege any physical loss of property. Indeed, the Second Circuit recently rejected such a theory when applying New York law. In 10012 Holdings, Inc., 21 F.4th at 216, the Second Circuit considered an insurance claim by an art gallery for business loss-of-use stemming from the COVID-19 pandemic. See id. at 219. The policy at issue was limited to "direct physical loss or physical damage[,]" id., and the Second Circuit relied on New York state appellate court authority interpreting a policy allowing coverage for "'all risks of direct physical loss or damage to the [insured's] property,'" in which "the Appellate Division held that the provision 'clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage.'" Id. at 221 (quoting Roundabout Theatre Co. v. Cont'l Cas. Co., 302 A.D.2d 1, 8 (N.Y. App. Div. 1st Dep't 2002)). The Second Circuit explained that "'direct

physical loss' and 'physical damage' in the Business Income and
Extra Expense provisions do not extend to mere loss of use of a
premises, where there has been no physical damage to such
premises; those terms instead require actual physical loss of or
damage to the insured's property." Id. at 222.[6]

Plaintiff attempts to distinguish 10012 Holdings, Inc. in a
Response to Defendant's Notice of Supplemental Authority. See
Doc. #69. Plaintiff appears to assert that 10012 Holdings, Inc.
is inapplicable here because it "affirm[ed] under NY law
dismissal of a COVID-19 business interruption complaint filed
under a much narrower policy. In addition, the insured, in 10012
Holdings, alleged that it was shut-down because of civil
authority orders only, and not because there was ever COVID-19
on its premises." Id. at 1. Plaintiff's arguments are
unpersuasive.

Plaintiff first suggests that 10012 Holdings, Inc., is
distinguishable because it was decided under New York law.
However, "both Connecticut and New York law share the same
principles for interpreting insurance policies[,]" Wiener v. AXA

---

[6] The Second Circuit has repeatedly reaffirmed this
interpretation of various policies' physical loss or damage
requirements. See BR Restaurant Corp., 2022 WL 1052061, at *2;
SA Hosp. Grp., 2022 WL 815683, at *2; Deer Mountain Inn LLC,
2022 WL 598976, at *2; Kim-Chee LLC, 2022 WL 258569, at *1; Rye
Ridge Corp., 2022 WL 120782, at *2.

Equitable Life Ins. Co., No. 16CV04019(ER), 2021 WL 1226925, at
*7 (S.D.N.Y. Mar. 31, 2021), and plaintiff does not identify any
basis for diverging from New York law in this instance.
Accordingly, the Court finds that the "Connecticut Supreme Court
would not find that loss of use would be sufficient to allege
physical loss or damage to the property." Dr. Jeffrey Milton,
DDS, Inc., 2022 WL 603028, at *9 n.4; see also Great Meadow
Cafe, 2022 WL 813796, at *5 (same); ENT & Allergy Assocs., LLC,
2022 WL 624628, at *3 (same); Conn. Children's Med. Ctr., 2022
WL 168786, at *4-6 (same).

Plaintiff then goes on to argue that 10012 Holdings, Inc.,
is factually distinguishable. This argument is similarly
unpersuasive. While plaintiff asserts that the policy in 10012
Holdings, Inc., was "much narrower" than the Policy at issue in
this case, Doc. #69 at 1, "actual physical loss of or damage" to
property is required to trigger the right to coverage under both
policies. 10012 Holdings, Inc., 21 F.4th at 222; see also supra
at 24-26. Plaintiff next contends that 10012 Holdings, Inc. is
distinguishable because the plaintiff in that case did not
allege the presence of COVID-19 on its premises. See Doc. #69 at
1. However, this argument is foreclosed by Kim-Chee LLC, which
held that 10012 Holdings, Inc. squarely applied to a plaintiff's
claims that COVID-19 "'was present at, in, throughout, and on
Plaintiffs' Premises[.]'" 2022 WL 258569, at *2. Accordingly,

plaintiff's attempts to distinguish <u>10012 Holdings, Inc.</u> are unpersuasive. Plaintiff fails to allege adequately physical loss or damage under this theory.

In sum, none of plaintiff's attempts to classify the impact of COVID-19 as "physical loss or damage" succeeds. As a result, plaintiff has failed to adequately allege a right to coverage under the Policy's Time Element, Civil or Military Authority, Ingress/Egress, or Logistics Extra Cost provisions. Moreover, because plaintiff has failed to establish the right to coverage under any of these provisions, it is not entitled to coverage under the Policy's Claims Preparation Cost provision. Plaintiff's breach of contract claim is therefore **DISMISSED**.[7]

**B.   Contamination Exclusion**

Plaintiff has failed to adequately allege physical loss or damage under the Policy. Accordingly, the Court need not -- and does not -- reach the parties' arguments regarding the Policy's Contamination Exclusion.

The undersigned notes, however, that the majority of courts to address identical contamination exclusions have held that such exclusions "unambiguously exclude[] coverage for 'any condition of property due to the actual or suspected presence of

---

[7] Because the Court finds that plaintiff has failed to adequately allege physical loss or damage, it does not reach defendant's assertion that plaintiff's arguments are barred by the law of the case doctrine. <u>See</u> Doc. #64-1 at 20.

any ... virus,' which would encompass the Virus that causes COVID-19." Ralph Lauren Corp. v. Factory Mut. Ins. Co., No. 20CV10167(SDW), 2021 WL 1904739, at *4 (D.N.J. May 12, 2021) (citation omitted); see also, e.g., Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co., 546 F. Supp. 3d 354, 368-69 (E.D. Pa. 2021) ("The definition of 'Contamination' is unambiguous and certainly applies to COVID-19."); Cordish Companies, Inc. v. Affiliated FM Ins. Co., No. 20CV02419(ELH), 2021 WL 5448740, at *20 (D. Md. Nov. 22, 2021) ("[T]he [contamination] exclusion can only be read as barring plaintiff's claims."); but see Thor Equities, LLC v. Factory Mut. Ins. Co., 531 F. Supp. 3d 802, 809 (S.D.N.Y. 2021) ("[B]ecause the Court finds that the Contamination Exclusion is ambiguous, judgment on the pleadings as to the applicability of the exclusion is inappropriate at this stage of the litigation[.]"). Thus, while the Court need not decide whether the Contamination Exclusion in this Policy would preclude plaintiff's claims, it notes that there is significant authority suggesting that plaintiff's claims for coverage would be barred on this independent basis.

In sum, plaintiff's breach of contract claim fails because it has not adequately alleged any "physical loss or damage" under the Policy. Accordingly, plaintiff's claim for breach of

contract is hereby **DISMISSED,** and defendant's Motion to Dismiss is **GRANTED.**[8]

**VII.  Conclusion**

Thus, for the reasons stated, the Motion to Dismiss [**Doc. #64**] is **GRANTED,** and plaintiff's Motion for Oral Argument [**Doc. #67**] is **DENIED.**

The Clerk shall close this case.

It is so ordered at New Haven, Connecticut, this 10th day of May, 2022.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE

---

[8] The Court does not reach defendant's argument that plaintiff's claims for coverage are independently barred by the Policy's Loss of Use Exclusion. See Doc. #64-1 at 37.